Filed 1/17/23 P. v. Quiahua CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JERONIMO QUIAHUA,<br><br>      Defendant and Appellant. | 2d Crim. No. B319239<br>(Super. Ct. Nos. PA092619,<br>PA096132)<br>(Los Angeles County) |

Jeronimo Quiahua appeals from the judgment after a jury convicted him of spousal rape (Pen. Code,[1] former § 262, subd. (a)(1); count 1), sodomy (§ 286, subd. (c)(2)(A); count 2), criminal threats (§ 422, subd. (a); count 3), corporal injury on a spouse (§ 273.5, subd. (a); count 4), assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 5), lewd acts on a child (§ 288, subd. (a); count 6), continuous sexual abuse of a child

---

[1] Unlabeled statutory references are to the Penal Code.

(§ 288.5, subd. (a); count 7), and oral copulation or sexual penetration of a child (§ 288.7, subd. (b); count 8).[2]  The jury also found true allegations that Quiahua used a deadly weapon when committing counts 1 and 2 (§ 12022, subd. (b)(1)) and that he committed counts 1, 2, 6, and 7 against more than one victim (§ 667.61, subd. (e)(4)).  The trial court sentenced him to 70 years to life in state prison plus three years eight months.

Quiahua contends his convictions on counts 6, 7, and 8 should be reversed because the trial court erroneously admitted into evidence photographs that were irrelevant and unduly prejudicial.  We affirm.

FACTUAL AND PROCEDURAL HISTORY[3]

J.Q. was born in October 2006.  Quiahua started molesting her when she was just three years old.  He put his fingers and penis inside her vagina.  When she would scream, he would cover her mouth and tell her to be quiet.  J.Q. did not tell anyone about Quiahua's abuse because she did not understand that the conduct was abnormal.

Over the next nine years, J.Q. endured some form of sexual abuse "almost every night."  Oftentimes, Quiahua would touch J.Q.'s vagina with his fingers and then penetrate it with his penis.  On other occasions Quiahua would grab J.Q.'s hand and

---

[2] Quiahua committed counts 1 through 5 against his now-former wife, R.A., and counts 6 through 8 against his eldest daughter, J.Q.

[3] Because Quiahua only challenges his convictions on counts 6, 7, and 8, we limit the factual and procedural history to the evidence related to the crimes committed against J.Q.

2

put it down his pants. He sometimes ejaculated during these interactions.

J.Q.'s sister, M.Q., once opened the bedroom door and saw her father having sex with her sister. J.Q. was on her back on the bed while Quiahua was on top of her, situated between J.Q.'s legs and moving his body back and forth. J.Q. was crying. Quiahua told M.Q. to go into the bathroom, where she waited for 10 or 15 minutes.

Another time M.Q. heard J.Q. crying and her parents' bed squeaking. She looked over and once again saw J.Q. lying on her on back with Quiahua on top of her. This time there was a blanket covering them.

Quiahua said that if J.Q. ever told her mother or anybody else about his abuse that he would go to jail and never be seen again. Despite this threat, in middle school J.Q. told a counselor, R.A., and a friend about Quiahua's abuse.

Prosecutors charged Quiahua with committing lewd acts on J.Q. when she was two or three years old, orally copulating or sexually penetrating her when she was around that age, and continuously sexually abusing her from ages four to 12. At trial, they sought to introduce six photographs of J.Q. into evidence: one depicting her when she was four or five years old, one when she was eight or nine, one when she was nine or 10, one when she was 10 or 11, one when she was 11 or 12, and one when she was around 13.[4] During her testimony, J.Q. identified herself in each photo. She told jurors that each one was taken "during the

_____

[4] The latter photograph was taken two months after Quiahua's arrest. Nothing in the record suggests that J.Q.'s appearance changed significantly during those two months.

3

timeframe that things were going on sexually with [her] father." Quiahua did not object to the introduction of any of the photos.

During cross-examination, Quiahua referenced the photographs several times, noting that J.Q. was "really small" in some of them and that she had "grown a lot since then." He also asked whether J.Q. remembered being three or four years old, as she was depicted in some of the pictures; J.Q. said that she did.

Prosecutors briefly referenced the photographs in closing argument, noting they were taken during the timeframe Quiahua was charged with abusing J.Q. Quiahua also referenced the photos during his closing, noting that J.Q. had alleged that he sexually assaulted her almost daily for nearly a decade but none of the photos showed any injury: "4,000 times and there's not a single picture of any injury, trauma, redness. [¶] . . . [¶] No injuries, no photographs, nothing consistent with what she's saying happened. It doesn't make sense."

## DISCUSSION

Quiahua contends his convictions on counts 6, 7, and 8 should be reversed because the trial court erroneously admitted into evidence six irrelevant, unduly prejudicial photographs of J.Q. But Quiahua did not object to the admission of the photos at trial. His contention is forfeited. (*People v. Fayed* (2020) 9 Cal.5th 147, 196-197; see Evid. Code, § 353.)

Alternatively, Quiahua contends counsel provided ineffective assistance by failing to object to the photographs at trial and forfeiting his challenge to their admission on appeal. This contention requires him to show, by a preponderance of the evidence, that counsel performed deficiently and that that deficient performance resulted in prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) These showings are "particularly difficult"

4

to make on direct appeal.  (*Ibid.*) As to the first, we "defer to counsel's reasonable tactical decisions" and indulge "a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'  [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)  We will not find deficient performance unless no conceivable reason for counsel's actions appears on the record.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)  As to the second, Quiahua can establish prejudice by showing " 'a probability sufficient to undermine confidence in the outcome.'  [Citations.]" (*Ibid.*)  He must "prov[e] prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel.  [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

Quiahua fails to make the requisite showings here. Quiahua fails to show deficient performance because it is conceivable that counsel did not believe the photographs of J.Q. were irrelevant or unduly prejudicial and thus did not object.  (Cf. *People v. Lucero* (2000) 23 Cal.4th 692, 732 [counsel not required to make meritless objection].)  For example, counsel may not have objected to the photos because he recognized that they were relevant to showing J.Q.'s size relative to father's when the crimes were alleged to have occurred.  (Evid. Code, § 210 [evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence"].)  Or he may not have objected because he recognized that the photos "provided jurors with visual information beyond what testimony could offer." (*People v. Parker* (2022) 13 Cal.5th 1, 41; see also *People v. Michaels* (2002) 28 Cal.4th 486, 532 [noting that photos are not unduly prejudicial if they assist jurors in understanding witness testimony].)  It is also conceivable that counsel may not

have objected because he wanted to use the photos to attack J.Q.'s credibility: During cross-examination, he asked J.Q. whether she remembered being the ages of when she was depicted in the photos. And during closing argument, he noted that none of photos showed any injury to J.Q., despite the daily abuse she said she was enduring at that time. (Cf. *People v. Ledesma* (2006) 39 Cal.4th 641, 748 [no deficient performance where evidence of "obvious benefit" to defense]; *People v. Hart* (1999) 20 Cal.4th 546, 633 [no deficient performance where counsel's actions "cast doubt" on prosecution case].) Thus, on this record, we cannot say that Quiahua has shown that counsel did not have a tactical reason not to object to the challenged photos.

Even if he had, however, Quiahua has failed to show a reasonable probability that the outcome of trial would have been different if the photographs of J.Q. were not admitted. The photos depicted J.Q. in her soccer uniform, with her siblings, and at a school graduation. Such "ordinary" photos are unlikely to elicit sympathy or have a prejudicial impact. (*People v. Suff* (2014) 58 Cal.4th 1013, 1072.) In contrast, the evidence of Quiahua's molestation was significant: J.Q. testified about it, citing specific incidents and providing relevant details of Quiahua's abuse. M.Q. then corroborated J.Q.'s testimony, detailing two incidents in which she witnessed her father having sex with her sister. Such evidence, when considered alongside the negligible prejudicial impact of the photos, does not undermine our confidence in the outcome of trial. Quiahua's ineffective-assistance-of-counsel claim accordingly fails.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Michael Terrell, Judge

Superior Court County of Los Angeles

_____

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.